**UNITED STATES of America**

v.

**Clifton S. HAIRSTON, Appellant.**

**No. 71–1657.**

United States Court of Appeals, District of Columbia Circuit.

April 4, 1974.

Louis Zimmet (appointed by this court) was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, Kenneth Michael Robinson, and David G. Larimer, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN and TAMM, Circuit Judges, and JAMESON * Senior United States District Judge for the District of Montana.

McGOWAN, Circuit Judge:

Appellant Hairston was tried jointly in the District Court with Archie J. Lee, and both were found guilty of violations of the federal narcotics laws. 26 U.S.C. § 4704(a) and 21 U.S.C. § 174. Appeals followed, and that of Lee has heretofore been disposed of by affirmance. Hairston's appeal was held in abeyance pending this court's *en banc* resolution of United States v. Henson, 159 U.S.App. D.C. 32, 486 F.2d 1292 (1973).

*Henson* was eventually decided on the ground that 14 D.C.Code § 305 (Supp.

* Sitting by designation pursuant to Title 28, U.S.Code, Section 294(d).

VI, 1973), mandating the admissibility of prior convictions for impeachment purposes, was an *ex post facto* law when applied to defendants tried for crimes committed before its effective date, February 1, 1971. Appellant was arrested for an offense occurring twelve days after that date; and there is, accordingly, no *ex post facto* issue presented by this appeal. It thus becomes necessary to consider questions not reached in *Henson.* We decide that the statute in question was not intended by the Congress to be applicable to the trial of U. S. Code, as distinct from D.C. Code, offenses.

## I

Appellant was apprehended during a police raid.[1] Detective Hill, the Government's principal witness, testified that following his entry into the premises described in the warrant he proceeded to a rear room in the building and, upon entry, noticed appellant, then standing some six to ten feet away, drop a green change purse to the floor. The detective stated that he immediately retrieved the purse, which contained twelve packets of heroin. Hill further testified that he apprehended appellant inside the building before appellant could escape through a rear door. The detective advised appellant of his rights, searched him, and discovered a syringe that was introduced as evidence at trial.

Hairston's defense was a denial of the critical portions of Detective Hill's in-

culpatory testimony. According to his version of the events, appellant was shooting craps in the back room for approximately one hour before the police arrived; he escaped through the back door and was arrested in the alley by another officer, not by Detective Hill; he had been searched by an Officer Anderson rather than Detective Hill;[2] no syringe had been discovered on his person; and the first time he saw either the syringe or the coin purse was at the police station following his arrest. The essence of Hairston's version of the events, emphasized by his counsel in closing argument to the jury, was that Detective Hill was mistaken in thinking that appellant was the person he had seen drop the coin purse and thereafter arrested and searched inside the premises.

Testimony of co-defendant Lee tended to corroborate one critical portion of appellant's version of the events. Lee testified that he had seen Hairston and another individual escape through the back door while the raid was in progress. This much of appellant's version of the events was further corroborated by the testimony of witnesses Overton and Jackson.[3]

■ This conflict in testimony sets the scene for the issue we address hereafter, namely, the propriety of the use of a prior conviction of appellant to impeach his credibility.[4] On cross examination, the prosecutor asked appellant whether he was the same person who

---

1. The validity of neither the search warrant nor the appellant's arrest and search is in issue on this appeal.

2. Neither the defense nor the prosecution elicited the testimony of Officer Anderson on this question.

3. Miss Jackson testified only that she saw appellant leave through the rear door. Mr. Overton's testimony indicated some confusion as to exactly how many persons left through the rear door, but he consistently maintained that appellant was among two or three persons who did manage to get out through that door. Detective Hill was the only Government witness to testify that only one person left through the rear door.

While the record suggests some superficial contradictions in Hill's statements, a fair reading of Hill's testimony indicates that he was reasonably certain that only one person had so departed, and completely certain that he apprehended appellant inside the premises.

4. The other claims of error made by appellant do not necessitate reversal. The prosecutor admittedly erred in suggesting that one defense witness had a prior conviction for grand larceny, but the mistake was immediately discovered and an apology made to the witness and the jury; the court's handling of the matter eliminated any serious risk of prejudice. Some of the prosecutor's

had been convicted for assault with intent to commit rape in 1964, a fact which appellant admitted and which the court, by reference to the mandatory nature of 14 D.C.Code § 305, permitted to remain in evidence over a defense objection.[5] Appellant asserts that this application of the statute conflicts with the Constitution.

## II

The predecessor version of Section 14–305 of the D.C.Code, as interpreted by this court in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), allowed the trial court to exercise discretion in determining whether to admit evidence of prior convictions for the impeachment of criminal defendants when they testified in their own defense.[6] Proper exercise of that discretion required that the trial court consider whether the probative value of appellant's prior conviction with respect to his credibility might be outweighed by the potential prejudice flowing from the jury's awareness of the prior conviction

and its tendency to assume, limiting instructions notwithstanding, that guilt in the present case was inferable from guilt in the prior instance. In the years following Luck this court articulated standards to assist the trial courts in the exercise of this discretion. See, e. g., Gordon v. United States, 127 U.S. App.D.C. 343, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

The Luck approach mirrored that available in all federal courts by reason of Rule 26 of the Federal Rules of Criminal Procedure.[7] Luck held that the prior Section 14–305, construed to reflect the usual significance of the word "may," was not intended to deprive the trial court of its traditional common law discretion to balance possible prejudice against probative value in deciding whether to admit a particular piece of evidence (see Rule 403 of the Proposed Federal Rules of Evidence), including prior convictions for impeachment purposes. Subsequent opinions of this court pointed out that, when that discre-

---

statements in closing argument, although ill-conceived, were again the subject of adequately curative direction to the jury by the court. The record provides no foundation for a final contention that the prosecution wrongfully withheld information from appellant.

5. The following colloquy took place at the bench after defense counsel's objection to use of the conviction for impeachment (Tr. 71–2):

COUNSEL: If he is using this to impeach his credibility this is not the type of crime.
THE COURT: The statute says any kind of crime.
COUNSEL: That is the literal meaning but assault with intent to rape and crimes of violence don't necessarily reflect upon one's truth-telling or veracity.
THE COURT: It doesn't occur to me that rapists are renowned for their veracity. I admit that some people do disagree with that. The Court of Appeals doesn't think that stealing a $5,000.00 automobile affects veracity. But be that as it may, I will admit it. Have you anything else?
COUNSEL: No. I just make a constitutional objection. I didn't realize Mr. Robinson was going to use the rape. I antici-

pated the petty larceny but I didn't anticipate the rape. It bore on my decision whether to put the defendant on the stand.
THE COURT: You know what the statute says and there is no more Luck.
COUNSEL: I don't interpret the statute as meaning any crime. I feel your Honor must have some discretion in deciding what should be entered. Your Honor may rule as to evidentiary questions and I don't think Congress ever meant to take Your Honor's discretion away from you.
THE COURT: As a matter of fact, I think that is exactly what Congress did mean to do. In any event, I overrule the objection.

6. The statute applies in terms to any witness. However, it is most frequently applied to the criminal defendant, and it is in this posture that the most troublesome constitutional questions arise.

7. Rule 26 provides that "[t]he admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

tion is properly invoked by objection or request of the accused, the court must rule; and procedures were identified by which such exercise of discretion could, in appropriate circumstances, be as informed as possible. In no case did we alter the discretionary nature of the trial court's function in this regard. *See, e. g.*, United States v. Thomas, 147 U.S.App.D.C. 41, 452 F.2d 1373, 1374 (1971). Nor does the record of this court in reviewing *Luck* points on appeal suggest that it has abjured the customary appellate approach to matters committed to the trial court's discretion. *See* Weaver v. United States, 133 U.S. App.D.C. 66, 408 F.2d 1269, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969).

When *Luck* and its subsequent application in this court are correctly understood, as appears not to be the case in many quarters, the Government's version of the response to *Luck* in other circuits comes into better focus in relation to the issue involved in this case, namely, whether the revised Section 14–305 of the D.C.Code was intended to foreclose the federal district courts in this circuit from exercising this discretion in the trial of U.S.Code offenses. While some other circuit courts have appeared to be unconvinced of the necessity of the trial court's spending much, if any, time on proceedings designed to make the discretionary ruling an informed one in the first instance, and have perhaps themselves been prepared to accord such rulings very broad latitude indeed on appellate review, none, to our knowledge, has asserted that the admissibility of prior convictions to impeach the criminally accused is not a

question committed to the trial court's discretion.[8]

In *Henson* this court unanimously concluded *en banc* that the existence of this discretionary power in the trial court offered the defendant two distinct advantages, the statutory nullification of which after the commission of the crime charged deprived him of substantial rights. First, the discretion to exclude evidence of prior crimes can help to assure that the Government's burden of proof does not slip below the constitutionally required standard. *Henson, supra,* 486 F.2d at 1307; and *see* In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The trial court is enabled in a proper case to protect the defendant from the obvious prejudice that flows from the admission of evidence of convictions for past offenses. To the extent that the result of this prejudice is the creation of an inference of guilt, or at least the dilution of the impact of the defendant's protestations of innocence, the trial court's discretionary power reenforces the *Winship* burden.

Secondly, the trial court's discretionary determination to exclude evidence of prior crimes can guard against possible dilution of the right of the accused to testify in his own behalf. *Henson, supra,* 486 F.2d at 1308. *Cf. Gordon, supra,* 383 F.2d at 940; *Luck, supra,* 348 F.2d at 769. When confronted with the fact that his testimony would enable the prosecution to introduce otherwise inadmissible evidence of his criminal past, a defendant frequently remains silent, even though his testimony may be highly relevant to the issue of guilt or innocence. The existence and exercise of the

---

8. *See, e. g.*, United States v. Harding, 475 F. 2d 480, 485 (10th Cir.), vacated on other grounds, 414 U.S. 964, 94 S.Ct. 274, 38 L. Ed.2d 211 (1973); United States v. Jansen, 475 F.2d 312 (7th Cir.), cert. denied, 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973); United States v. O'Day, 467 F.2d 1387 (9th Cir. 1972), cert. denied, 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275 (1973); United States v. Driscoll, 454 F.2d 792, 799 (5th Cir. 1972); United States v. Cox, 428

F.2d 683, 689 (7th Cir.), cert. denied, 400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120 (1970); United States v. Cacchillo, 416 F.2d 231 (2d Cir. 1969); United States v. Allison, 414 F.2d 407, 411–412 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed. 2d 433 (1969); United States v. Palumbo, 401 F.2d 270 (2d Cir. 1968), cert. denied 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969).

discretionary power to exclude evidence of prior crimes can, in appropriate circumstances, avoid this result.

■ The recent rewriting by Congress of 14 D.C.Code § 305 appears to have represented a legislative determination that the public interest is best served by assuring the jury an opportunity to weigh the credibility of the testimony of a criminal defendant in the light of his prior criminal record.[9]

That is a judgment which, subject possibly to due process limitations, Congress is fully capable of making in respect of the trial of D.C.Code crimes.[10] When, however, that judgment is sought to be extended to the trial of U.S.Code crimes in the United States District Court for the District of Columbia, constitutional problems of a vastly different order are encountered. The existence and nature of these difficulties were identified by this court, speaking with one voice *en banc*, in *Henson*. There we said (486 F.2d 1309, n. 20):

> Our disposition of these appeals also enables us to forego consideration of what we consider to be an important question raised in respect of the

*Henson* and *Brown* cases, both of which were prosecutions for United States Code offenses as contrasted with the *Jeffries* and *Marshall* prosecutions under the District of Columbia Code. If the new D.C. impeachment statute is to be interpreted as applicable to federal criminal trials, it would mean, first, that the federal courts in the District of Columbia would be placed upon a different footing, with respect to the admissibility of evidence of prior convictions, from the federal courts in the other ten circuits, which remain free to devise their own rules of admissibility under Fed.R.Crim.P. 26 irrespective of the rule of the local jurisdiction in which they sit. *See, e. g.*, United States v. Woodall, 438 F.2d 1317, 1327 (5th Cir. *en banc* 1971).

Second, it would place criminal defendants prosecuted in the federal courts of the District of Columbia on a different footing from those tried in any other federal circuit, although both classes of defendants may be charged under the same U.S.Code provisions. This treatment of simi-

---

9. The statute, part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, provides in pertinent part:

(a) No person is incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a criminal offense.

(b)(1) Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, *evidence that the witness has been convicted of a criminal offense shall be admitted if offered*, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing conviction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.

(2)(A) Evidence of a conviction of a witness is inadmissible under this section if—

(i) the conviction has been the subject of a pardon, annulment or other equivalent

procedure granted or issued on the basis of innocence, or

(ii) the conviction has been the subject of a certificate of rehabilitation or its equivalent and such witness has not been convicted of a subsequent criminal offense.

(B) In addition, no evidence of any conviction of a witness is admissible under this section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense.

10. The D.C. Court of Appeals—since reorganization the functioning "supreme court" of the District of Columbia—has sustained the new Section 305 against constitutional challenge, including that founded on the Fifth Amendment. Dixon v. United States, 287 A.2d 89, cert. denied, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). *See* United States v. Bailey, 138 U.S.App.D.C. 242, 426 F.2d 1236, 1242 (1970).

larly situated persons in a different fashion is fraught with equal protection overtones. *See* United States v. Thompson, 147 U.S.App.D.C. 1, 452 F.2d 1333 (1971); *cf.* Long v. Robinson, 316 F.Supp. 22 (D.Md.1970). More importantly, as the Government properly concedes, the federal courts here are established by the Congress pursuant to its power under Article III of the Constitution, and as such are invested with the same "judicial Power of the United States" as are all other inferior federal courts. Whether they may, in the context of the cases before us, be singled out for different treatment from Article III courts elsewhere raises serious constitutional questions.

\* \* \* \* \* \*

■■  We are not now called upon to resolve these substantial constitutional issues. As we demonstrate hereinafter, the legislative history of the recent and thorough-going revision of 14 D.C.Code § 305 indicates that Congress did not intend that statute to embrace U.S.Code crimes. Courts confronted with significant constitutional issues in the application of statutes to particular fact situations traditionally inquire first whether Congress intended the legislation to apply to those cases. *See, e. g.,* United States v. Rumely, 345 U.S. 41, 45, 73 S. Ct. 543, 97 L.Ed. 770 (1953); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932). In general terms, the presumption of the constitutional validity of legislation enacted by Congress raises a corollary presumption that constructions calling statutes into serious constitutional question are erroneous and, in any event, are to be avoided whenever possible. *See Thompson, supra,* 452 F.2d at 1341. With these admonitions in mind, we turn away from constitutional exegesis to the more prosaic task of statutory construction.

### III

The Government's argument for the applicability of 14 D.C.Code § 305 to trials of federal crimes takes its primary impetus from reference to the pre-reorganization distribution of jurisdiction in the District of Columbia. Pointing out that one statute has long purported to control admissibility of prior crimes evidence for both the federal and local courts sitting in the District of Columbia, it is maintained that the revised statute is designed to follow that pattern and to control both judicial systems in the future. In support of this position, the Government observes that the federal courts in the District for many years followed the provisions of the predecessor Section 305 in conducting trials for asserted violations of both D.C.Code crimes and United States Code crimes.

Additionally, the Government seeks to minimize the constitutional problems presented by that interpretation, urging that one of the critical factors that prompted this court in *Thompson* to conclude that the postconviction bail provisions of the Court Reform Act were inapplicable to persons convicted of committing federal crimes was the apparent conflict that that interpretation engendered between the bail provisions of the Court Reform Act and those of the Bail Reform Act. It asserts that in this case no such conflict exists, for there presently is no federal statute governing the admissibility of prior crimes evidence for the purpose of impeachment. Indeed, rather than presenting a case of conflict between different federal statutes, the Government asserts that 14 D. C.Code § 305 represents the kind of exception expressly contemplated by the terms of the Federal Rule 26 itself.

This approach seems to us to ignore the significance of the reorganization of the judicial system in the District of Columbia effected by Congress in the District of Columbia Court Reform and Criminal Procedure Act of 1970. Resort to the past would be more persuasive if. this court were dealing with a judicial structure resembling its predecessor. However, since the purpose of the Court Reform Act was to reorganize the judicial systems of the District of Columbia,

we examine the statute and its legislative history more carefully. And closer scrutiny strongly suggests that the Government's view of 14 D.C.Code § 305 does not correspond with the Congressional intent in revising this section in the context of a sweeping reorganization and reallocation of judicial power deriving from different constitutional sources.[11]

The legislative history of Section 305 reveals the Congressional contemplation that the federal courts of the District of Columbia would be governed by the impeachment provision of the Proposed Rules of Evidence for the United States District Courts and Magistrates. The Congressional assumption that the Proposed Rules would become effective shortly after enactment of the D.C. Court Reform and Criminal Procedure Act and thus bring uniformity between the rules prevailing in the federal and local courts of the District proved erroneous.[12] However, this does not alter the fact that the Congressional purpose was to enact two similar but separate provisions for the two court systems in the District of Columbia; for the one, the statute, for the other, the Rules of Evidence. Nor can the subsequent Congressional failure to make the latter effective empower this court to harmonize the practice in the District by extending the present 14 D.C.Code § 305 beyond its intended scope, especially when such an extension would itself pose the difficult constitutional problems noted above.

As the Government has correctly pointed out, the prior Section 305 had been applied in all trials conducted in the United States District Court of the District of Columbia. Indeed, some of the cases referred to by members of Congress in discussion of the wisdom of the *Luck* rule were trials for asserted violations of federal law. *See* H.Rep.No. 91–907, 91st Cong., 2d Sess. 62–63 (1970). That does not, however, prove the Government's assertion that the practices of the past are to be imported into the present.

The judicial discretion preserved in the predecessor Section 305 as construed in *Luck*—the "time-honored discretion of trial judges, in ruling on questions of admissibility of evidence, to weigh probativeness against prejudiciality," *Henson, supra*, 486 F.2d at 1305—was in accord with the common law principles made determinative by Federal Criminal Rule 26. Thus, trials for United States Code violations in the District's federal courts previously presented no problem of the existence of a statutory rule for this circuit that differed from that governing other circuits. The discretion was the same.

Prior to the Court Reform Act the District Courts for the District of Columbia had exclusive jurisdiction over all felony offenses committed in the District, including those committed in violation of local law. *See generally* Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). Since the federal courts alone had been responsible for trying serious violations of District of Columbia law, Congress obviously had to look to their experiences when legislating on criminal matters of local concern. However, to infer from Congressional reference to this history of the federal courts in the District an intention to bind those courts in their future trials of federal offenses bespeaks an indifference both to the purposes of the Court Reform Act and to the constitu-

11. The United States Courts in the District of Columbia represent an exercise by Congress of its powers under Article III. The local courts, contrarily, are a product of Article I.

12. Congress ultimately determined that the questions posed by the Rules of Evidence were too difficult to be considered adequately within the time limits originally contemplated for Congressional approval (by inaction) of the Rules as promulgated by the Supreme Court. Accordingly, it passed P.L. 93–12, 87 Stat. 9 (March 30, 1973), which provides that the Rules will not take effect unless affirmatively enacted by Congress.

tional problems that such an interpretation would raise.

The intention of Congress in the D.C. judicial reorganization was to create an independent judicial system to be responsible for "local" matters, and to free the federal courts of the District of that responsibility. The jurisdiction of the latter was to be reshaped in a manner more closely paralleling that of the other Article III courts of the nation. *Id.* at 408–409, 93 S.Ct. 1670. Even the most superficial examination of the legislative history of the Court Reform and Criminal Procedure Act reveals that Congress was both aware of the longstanding unique nature of the federal courts of the District of Columbia and intent upon substantial alteration of that status. A House Report characterized the legislative undertaking as follows:

> Upon completion of the . . . transfer of jurisdiction the United States District Court for the District of Columbia will be on a par with other United States district courts, exercising federal jurisdiction only, and the Superior Court of the District of Columbia will have all purely local jurisdiction.

H.Rep.No.91–907, *supra* at 34. *See also* S.Rep.No.91–405, 91st Cong., 1st Sess. 5 (1969); 116 Cong.Rec. 24740 (remarks of Senator Baker); *id.* at 8918 (Senator Ervin); 115 Cong.Rec. 8091 (Representative Abernethy); *id.* at 7934 (Representative Hogan).

■■ Vividly conscious that it was prescribing for both Article I and Article III courts, Congress specified that some provisions were intended to govern the conduct of one or the other judicial system, and that others were intended to apply to both.[13] The question here is whether 14 D.C.Code § 305 was intended to control the proceedings of the federal courts as well as the local courts. The legislative history of Section 305 demonstrates that Congress intended that statute to govern only the conduct of the local courts, on the assumption that the *Proposed Rules of Evidence for the United States District Courts and Magistrates* would soon establish a similar rule for the federal courts of the District.

Repeatedly throughout its consideration of Section 305, Congress expressed its awareness of the similar provision in the Proposed Rules of Evidence which would control the admissibility of evidence in all of the federal courts. Typical of these expressions is the following, which appears in H.Rep.No.91–907, *supra*, at 61–62:

> The rule for impeachment [Section 14–305] is essentially the same rule as that proposed in March 1969, by the

---

13. The organizational and jurisdictional provisions of Title 11 of the D.C.Code generally indicate their intended scope precisely, as do the provisions of Title 16 controlling particular actions and proceedings. Similarly, Section 13–301 specifically states that, "[e]xcept as otherwise specifically provided by law or rules of court, this chapter applies to the District of Columbia courts," which Section 11–101 defines to include only the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.

The intended scope of some of the provisions of Title 14 is not so clear, however. In some sections Congress again specified that the rule there established was to govern both the federal and the local courts. *See, e. g.*, 14 D.C.Code §§ 307, 309 (Supp. VI, 1973). In others, such as Section 14–305, the intended scope is left to judicial surmise. In these latter cases, we will not, absent an unmistakable indication of Congressional intent, imply a rule for the federal courts of this circuit differing in important respects from that controlling other Article III courts.

To the extent that confusion in the conduct of trials may be anticipated in those cases where the United States Attorney uses the authority given him under the reorganization statute to combine local and federal crimes in the same indictment, resulting in their trial together in the United States District Court, it would appear that the federal forum's evidentiary law would govern impeachment by prior conviction. The United States Attorney is not, of course, bound under the statute to combine local and federal charges, and is, accordingly, under no inescapable necessity to try local crimes under other than local law.

Advisory Committee on Rules of Evidence to the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States as *the model rule to be used in all federal. district courts and before all magistrates*. [Emphasis added]

In fact, Senate acquiescence in the House version of Section 305 was premised in large part on the realization that enactment of the Senate version would have established a standard that differed from that which was then contemplated for the federal courts generally.[14] As the Statement of the Managers on the Part of the Senate Submitted Regarding Conference Action upon S. 2601, the President's Crime Legislation for the District of Columbia, 91st Cong., 2d Sess. 24–25 (1970), explained:

> The House version . . . is supported by a draft of the Advisory Committee on Rules of Evidence to the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States . . . . The recession by the Senate conferees [to the House version] was explicitly conditioned . . . upon a conference agreement to reconsider the rule on impeachment if the Advisory Committee's draft is substantially modi-

fied in the Federal Rule adopted and promulgated by the Supreme Court. It would clearly be antithetical to have *one rule for the District's local courts and a different rule for the Federal courts.* [Emphasis added] [15]

Essentially the same argument was repeated on the floor of the House in opposition to Representative Dennis's amendment to the House bill, which some members considered to be a return to codification of the then existing case law of the District.[16]

Even the Government appears to have once interpreted Section 14–305 to speak only to the local courts. The then Deputy Attorney General, in a letter to Chief Justice Burger commenting on the Proposed Rules of Evidence, observed that "proposed Rule 609 contains several provisions which depart from the Congressional policy expressed in the 1970 legislation. Adoption of the rule in its present form would lead to burdensome divergent practices in the courts operating in the District of Columbia." Hearings on the Proposed Rules of Evidence Before the Special Subcomm. on Reform of Federal Criminal Laws of the House Comm. on the Judiciary, 93rd Cong., 1st Sess., ser. 2, at 44 (1973). The premise of this comment was obviously that the Proposed Federal Rules would govern

14. The Senate bill contained a section on impeachment that more closely reflected the basic parameters of the *Luck* doctrine. *See* S. 2601, 91st Cong., 1st Sess. (1969).

15. The House of Representatives' latest version of the Proposed Rules of Evidence, approved by that body on February 6, 1974, establishes an impeachment provision that differs significantly from that upon which Section 14–305 was patterned. Rule 609, governing impeachment by evidence of conviction of a crime, establishes a general rule that "evidence that he has been convicted of a crime is admissible *only if the crime involved dishonesty or false statement.*" H.R. 5463, 93d Cong., 1st Sess. (1974). The Senate has not yet acted on the Proposed Rules.

16. *See* 116 Cong.Rec. 8152–53 (remarks of Representative Hogan; *id.* at 8153 (Representative Abernethy); *id.* at 8155 (Repre-

sentative Flowers); *id.* at 8157 (Representative MacGregor).

At one point Representative MacGregor referred to Section 14–305 as applying "to the courts of the District." However, when read in light of his previous statement that the Proposed Rule 609 would be the model rule for "all Federal district courts," this statement would appear to refer only to the local courts of the District.

Additionally, it is perhaps significant that members of Congress primarily looked to the prevailing rule in the *state* courts for justification of Section 14–305. *See, e. g., id.* at 8152–53 (Representative Hogan); *id.* 8155 (Representative Flowers); H.Rep. 91–907, *supra*, at 62–63; *but see* 116 Cong. Rec. at 8157 (Representative MacGregor). It would seem that the legislators would additionally have canvassed the federal practice under Federal Criminal Rule 26 more carefully if they had thought that Section 14–305 was to alter the federal practice.

the federal courts of the District of Columbia.

In light of this apparently universal understanding that the Federal Rules of Evidence would set the standard for the federal courts of the District of Columbia, only one possible theory might be advanced to support the Government's contention that 14 D.C.Code § 305 now controls prosecutions of federal crimes in the District Courts of this circuit. This argument would have to be that Congress intended Section 305 to serve as an interim standard for the federal courts of the District until superseded by the Proposed Federal Rules.[17] However, this argument was not advanced by the Government and finds no support in the legislative history of Section 305.

The notion of interim legislation for the District was not foreign to Congress. For example, the transfer of jurisdiction over D.C.Code crimes from the federal courts to the local courts was achieved in carefully phased steps. Thus, it is not illogical to think that had Congress similarly wished an interim standard to govern the District's federal courts until the enactment of the Proposed Rules, it would have said so. We would be most reluctant to imply such an intent in the face of this legislative history, especially when the judicial construction would itself cause disparate treatment of Article III courts' powers to control important evidentiary matters. Proper canons of legislative interpretation suggest that our role should be precisely the opposite. We therefore choose to follow the more plausible interpretation of the legislative history of 14 D.C.Code § 305—that the Section was not intended to govern the trial of United States Code crimes in the federal courts of the District of Columbia.

Our determination that Congress intended the federal courts of this circuit to be governed by the same standards that control the conduct of criminal litigation in all other federal district courts of the nation leads us to the conclusion that this case should have been decided in accordance with the principles laid down by this court in *Luck, Gordon,* and other cases in this circuit that deal with the admissibility of prior criminal convictions. Congressional failure to enact Federal Rules of Evidence leaves Federal Criminal Rule 26 as the governing standard for these matters. Rule 26, in turn, recognizes the same discretion to balance prejudiciality against probativeness that this court found embodied in the original Section 305. That rule continues to be operative.

■■ The conclusion that the District Court erred in regarding Section 305 as depriving it of discretion to consider the probative value of the prior conviction against its possible prejudicial effect requires a remand of the nature directed in *Henson* (486 F.2d at 1309), that is to say, the District Court shall determine whether it would, in the exercise of discretion, have excluded the evidence of appellant's prior conviction and, if it should have, whether its failure to do so was, in any event, harmless error. The convictions appealed from are otherwise affirmed.[18]

It is so ordered.

17. 18 U.S.C. § 3771 provides that all laws in conflict with the rules of criminal pleading, practice, and procedure prescribed by the Supreme Court and adopted by Congress "shall be of no further force or effect after such rules have taken effect."

18. While this appeal was pending before the court, appellant filed a motion requesting that, in the event of a remand, we issue guidance to the District Court concerning the effect of United States v. Marshall, 158 U.S.App.D.C. 283, 485 F.2d 1062 (1973), on appellant's eligibility for parole under 18 U.S.C. § 4202. We regard this as neither necessary nor appropriate. The decision to grant or deny parole under 18 U.S.C. § 4202 is committed to the Board of Parole, 18 U.S.C. § 4203. Appellant's motion makes no suggestion that the Board is either unaware of the *Marshall* opinion or intent on avoiding its consequences.