UNITED STATES of America

v.

Marie J. BELT, Appellant.

UNITED STATES of America

v.

Freddie ROBINSON, Appellant.

UNITED STATES of America

v.

Michael LEWIS, Appellant.

UNITED STATES of America

v.

Harry C. WALLS, Appellant.

Nos. 72–1887, 72–1738, 73–1165
and 73–1167.

United States Court of Appeals,
District of Columbia Circuit.

Decided June 16, 1975.

Edward A. McCabe and John H. Spellman, Washington, D. C. (both appointed by this court), were on the brief for appellant Marie J. Belt.

Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and John T. Kotelly, and Douglass J. McCollum, Asst. U. S. Attys., were on the brief for appellee in No. 72–1887.

Alvin Guttag, Washington, D. C. (appointed by this court), was on the brief for appellant Freddie Robinson.

Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and John A. Terry and Lawrence H. Wechsler, Asst. U. S. Attys., were on the brief for appellee in No. 72–1738.

Sherman L. Cohn, Washington, D. C. (appointed by this court), and Joel B. Kleinman * (Student Counsel), Washington, D. C., were on the brief for appellants Michael Lewis and Harry C. Walls.

Earl J. Silbert, U. S. Atty., John A. Terry, John E. Drury, III, Regina C. McGranery, and Paul L. Friedman, Asst. U. S. Attys., were on the brief for appellee in Nos. 73–1165, 73–1167.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, en banc.

Opinion for the Court filed by Circuit Judge McGOWAN.

Opinion filed by Circuit Judge MacKINNON, concurring in part and dissenting in part.

Circuit Judges ROBB and WILKEY concur in the result.

McGOWAN, Circuit Judge:

These criminal appeals were made the subject of *en banc* consideration because they variously involve issues relating to (1) the range of application of 14 D.C.

---

* Entered appearance as Student Counsel pursuant to Rule 20 of the General Rules of this court.

Code § 305 and (2) its validity as against constitutional challenge in those cases where it does apply. The statute is addressed to witness impeachment by prior conviction, and it makes such evidence mandatorily admissible in the circumstances specified by it.[1]

These cases were held in abeyance to await this court's *en banc* decision in United States v. Henson, 159 U.S.App. D.C. 32, 486 F.2d 1292 (1973). In *Henson* the court unanimously determined that 14 D.C.Code § 305 is an *ex post facto* law when applied to the trial of defendants for crimes allegedly committed prior to February 1, 1971, the effective date of the statute. *Henson* does not govern the instant appeals, however, since all appellants were convicted of offenses committed subsequent to that date. It is thus necessary for the court now to resolve issues not reached in *Henson*.

We conclude that 14 D.C.Code § 305 is applicable to District Court trials of indictments alleging only violations of the D.C.Code and returned in the District Court during the eighteen-month transitional period (February 1, 1971 to August 1, 1972) established by 11 D.C.Code § 502(2).[2] In such case, we also find that the statute is not violative of the United States Constitution. Finally, we hold that, where an indictment is triable in the District Court because it includes both U.S.Code and D.C.Code offenses, the mandate of 14 D.C.Code § 305 is not operative.

I

No. 72–1738—*U. S. v. Robinson.*

Appellant Robinson was tried on an indictment returned in the District Court prior to August 1, 1972 and alleging only violations of the D.C.Code. He was convicted on two counts of assault with a dangerous weapon (22 D.C.Code § 502), and two counts of armed robbery (22 D.C.Code §§ 2901, 3202).[3]

The evidence of record indicates that appellant and a companion, one Allen, entered a liquor store, and that Allen produced a pistol. Appellant remained in the middle of the store while Allen stole some $150. At one point an employee entered the store, and appellant instructed him to stand still and keep his

1. The statute, part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, provides in relevant part:
   (a) No person is incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a criminal offense.
   (b)(1) Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing conviction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.
   (2)(A) Evidence of a conviction of a witness is inadmissible under this section if—
   (i) the conviction has been the subject of a pardon, annulment, or other equivalent procedure granted or issued on the basis of innocence, or
   (ii) the conviction has been the subject of a certificate of rehabilitation or its, equiva-

lent and such witness has not been convicted of a subsequent criminal offense.
   (B) In addition, no evidence of any conviction of a witness is admissible under this section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense.
   \* \* \* \* \* \*
   (d) The pendency of an appeal from a conviction does not render evidence of that conviction inadmissible under this section. Evidence of the pendency of such an appeal is admissible.

2. Since *Henson*, we have held that the statute in question does not apply in the trial of U.S. Code offenses in the District Court. United States v. Hairston, 161 U.S.App.D.C. 466, 495 F.2d 1046 (1974).

3. The convictions for assault with a dangerous weapon—a lesser included offense of armed robbery—must be vacated under our decision in United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973).

hands down. Finally, upon completion of the robbery appellant left the store with Allen, who had taken the store owner as hostage. A scuffle ensued between Allen and the hostage, in the course of which Allen took the hostage's watch, following which both appellant and Allen entered an automobile driven by a third person.

■ An alert passerby noticed the events outside the store, followed the car, and notified the police. All three occupants were apprehended in the automobile, and the spoils of the robbery were recovered.[4]

Before taking the stand in his own defense, Robinson asked that the prosecution be barred from impeaching him with a prior conviction for second degree murder. This was denied, apparently by reference to the mandatory nature of the statute. Robinson took the stand anyway, and was impeached over his objection. On appeal, he argues that the application of the statute to him was so prejudicial as to constitute a deprivation of due process.[5]

## Nos. 73–1165, 73–1167—U. S. v. Lewis and Walls.

Appellants in these consolidated appeals, and a third individual named in the indictment, were convicted of robbery, 22 D.C.Code § 2901, and all appealed. The appeal of the third person was dismissed on his own motion, and a division of this court, by an order entered October 4, 1973, affirmed appellants' convictions without prejudice to their notation of a further appeal if the pending en banc decision in Henson should warrant such action. Appellants having filed for rehearing on the day following the announcement of Henson, the division allowed rehearing and received supplemental briefs from the parties.

Two points were initially urged upon the division. One was that the evidence against Lewis (who testified without impeachment) was insufficient to support his conviction, and that his conviction should be reversed because of the consequent error in denying his motion for acquittal. The other was that the statute mandating the impeachment of Walls by prior convictions for simple assault and petty larceny was unconstitutional—an issue which had not been raised in the District Court and in support of which appellants mainly relied on the briefs before the court en banc in Henson.[6]

---

**4.** Appellant challenges the sufficiency of the evidence in support of his convictions for the robbery and assault of the store owner, which occurred on the street outside the liquor store. Since we have vacated the assault with a dangerous weapon conviction as the lesser included offense of armed robbery, the only remaining question relates to the propriety of the latter.

Viewing the evidence most favorably to the prosecution, as we must, Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967), we find it ample to support this conviction. The evidence indicates that both Robinson and Allen participated in the robbery inside the store, and that they left jointly with the store owner as hostage. While the record suggests that appellant may have been heading for the car at the time his companion took the hostage's watch, there was adequate evidence from which the jury could have concluded that that robbery was not the companion's independent frolic or unrelated to the general criminal scheme. Given appellant's participation in the events in the store, the question of his relationship to the subsequent robbery of the hostage turned largely on the credibility of his assertion that that part of the venture was his companion's independent frolic. Credibility is primarily an issue for the jury. See, e. g., Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602 (1967).

Appellant additionally maintains that the court's instruction on aiding and abetting was erroneous. We find, however, that it was consistent with our decision in Bailey v. United States, 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969).

**5.** Appellant does not appear to have argued, either in the District Court or on appeal, that the statute, properly construed, did not apply in his case, or that, if held to be applicable, he was denied equal protection.

**6.** These constitutional claims were couched in terms of (1) asserted Fifth and Sixth Amendment rights to a fair trial and a fair and impartial jury, and to the exclusion of prior convictions which have no relevance to veracity, and (2) an alleged violation of equal protection by the statute's use of an arbitrary ten-year period from the date of a defendant's release as

■ Since the principal issues presented by this appeal in its present posture concern the applicability and constitutionality of 14 D.C.Code § 305, we find it unnecessary to elaborate at length the evidence produced at trial. We find, as did the division, that such evidence sufficed to support the conviction of Lewis.[7]

■ In their supplemental brief on rehearing, appellants urge two non-constitutional grounds for reversal. The first of these is that, since simple assault is not a felony and does not involve dishonesty or false statement, the trial judge erred in permitting impeachment of Walls by a prior conviction for that offense. The Government concedes the error, as it must in light both of the explicit limiting language of 14 D.C.Code § 305 and the legislative history of that statute, which latter clearly indicates that Congress did not regard "dishonesty or false statement" as comprehending assault. It argues, however, that the error was harmless under all the circumstances, and provides no occasion for the reversal even of Walls' conviction, much less that of both appellants.[8]

Appellants' second non-constitutional claim is that, properly construed, 14 D.C. Code § 305 does not apply to any criminal trials in the District Court, irrespective of whether the offense is federal or local. A contrary reading, they insist, would result in a denial of equal protection, since criminal defendants would be tried in the federal courts of the District of Columbia under evidentiary rules differing from those which could be observed in federal courts outside the District, Congress not having as to the latter purported to foreclose the exercise of discretion to determine in appropriate circumstances that the prejudicial effect of a prior conviction outweighs its probative value with respect to credibility.

## No. 72–1887—*U. S. v. Belt.*

Appellant Belt was charged under a two-count indictment alleging violations of (1) the federal offense of possession of narcotics with intent to distribute, 21 U.S.C. § 841, and (2) 33 D.C.Code § 402, which prohibits unlawful possession of narcotic drugs. She was acquitted by a jury of the federal charge, but convicted

the period within which a prior conviction might be used for impeachment.

7. The conviction grew out of an early morning robbery of a cab driver. Three men entered the cab in question—one in the front seat, and two in the back. The driver, who had a good opportunity to observe all three when they first approached and got into his cab, later identified Walls as the one who rode in the front seat, and Lewis and Fields as those in the back. The victim's testimony was that, while driving along, Fields directed him to stop and put an umbrella around his throat. Walls then searched the victim's pockets, removing his hawk-billed knife and some money from his pocket. Walls also was said to have torn the Benrus watch from the driver's arm, breaking the watchband. The victim was then told to drive on, which he did while there were discussions in the back seat. Eventually the riders left the cab, and the driver called his dispatcher by radio, resulting in a police radio run which brought an officer in his scout car to the scene of the robbery very quickly. The officer arrested three men running down the street, and they were immediately identified on the scene by the cab driver—an identification which was repeated in court. On the scene the police confiscated Walls' umbrella, and they found a hawk-billed knife in Lewis' pock-

et. Shortly afterwards, at the precinct station, they found a Benrus watch in Walls' boot. The driver immediately identified the knife and the watch as his own, the strap on the latter still being broken; and he also identified the umbrella as the one used to overpower him.

Lewis and Walls each testified, saying that they had been walking along the street innocently when they were suddenly arrested. Lewis said that the hawk-billed knife was his own, but could not remember when he had acquired it. Walls offered no explanation as to how the Benrus watch happened to be in his boot.

8. In view of the overwhelming case made out by the prosecution against both Lewis and Walls, see note 7 supra, and the feebleness of their testimony in their own defense, we are not persuaded that either one or both were significantly prejudiced by the court's mistake in regarding the assault conviction as qualifying under the statute. That conviction was at most cumulative in its impact, since the petty larceny conviction undoubtedly loomed larger in the minds of the jury in the context of this case. The court's error was harmless to a degree making reversal unrealistic and unwarranted in the circumstances disclosed by this record.

and sentenced for violation of the D.C. Code provision.

The evidence of record indicates that on January 21, 1972, a police officer, pursuant to a valid warrant, entered appellant's bedroom and questioned her about narcotics. During the questioning, the officer was momentarily distracted by a dog. Shortly thereafter, a second officer arrived at appellant's bedroom with a packet containing heroin that he said had just been thrown from appellant's window. Neither officer actually saw appellant throw the packet, and appellant denied that she had done so. During the course of her testimony, appellant was impeached with evidence of a 1963 narcotics conviction. Admission of that evidence followed defense counsel's objection and a bench conference in which the court indicated its opinion to be that 14 D.C.Code § 305 applied.

■ In this court appellant asserts that (1) the evidence was insufficient to support her conviction for the local offense of possession and (2) 14 D.C.Code § 305 impaired her rights, under the Fifth and Sixth Amendments, to due process and trial by an impartial jury. As to the former, our examination of the entire record causes us to conclude that the trial court did not err in submitting the matter to the jury.

## II

*Robinson,* and *Lewis* and *Walls,* involve indictments charging only D.C. Code offenses. They were tried in the District Court only because the indictments were returned prior to August 1, 1972—the end of the 18-month transitional period leading to exclusive jurisdiction over such indictments in the Superior Court of the District of Columbia. These cases, thus, present initially the question of whether 14 D.C.Code § 305 was intended by Congress to apply to trials of such indictments in the District Court. If the answer to that question is yes, *Belt,* which involves an indictment combining U.S.Code and D.C.Code offenses, presents—by reason of our holding in *Hairston* that Section 305 does not apply to trials of U.S.Code offenses—the

practical problem of whether it governs the single trial of the combined offenses.

As noted above, appellants Lewis and Walls argue the first of these questions in terms of Section 305's asserted inapplicability to any criminal offense—federal or local—tried in the District Court. Since that argument was first propounded to us, we have, in *Hairston,* excluded U.S.Code crimes from the statute's reach. That result, however, does not carry with it a similar conclusion as to the trial of D.C.Code offenses in that court under the transitional jurisdiction.

*Hairston* turned upon the manifest purpose of Congress, in the sweeping judicial reorganization effected by the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473, to alter sharply the pattern of the past. As we there said (at 1054 of 495 F.2d):

The intention of Congress in the D.C. judicial reorganization was to create an independent judicial system to be responsible for "local" matters, and to free the federal courts of the District of that responsibility. The jurisdiction of the latter was to be reshaped in a manner more closely paralleling that of the other Article III courts of the nation. . . . Even the most superficial examination of the legislative history of the Court Reform and Criminal Procedure Act reveals that Congress was both aware of the longstanding unique nature of the federal courts of the District of Columbia and intent upon substantial alteration of that status . . .

We also noted (at 1056) that ". . . the transfer of jurisdiction over D.C. Code crimes from the federal courts to the local courts was achieved in carefully phased steps." This was to prevent undue strain on the new local court system during its infancy. The heavy volume of D.C.Code indictments made gradual transfer especially necessary in this area of the law; and the scheme followed in this respect was to retain jurisdiction in the District Court over D.C.Code indictments for the seven most serious felonies, filed between February 1, 1971, the

effective date of the reorganization law, and August 1, 1972. 11 D.C.Code § 502. Thus it was that the District Court has continued to function temporarily as a local court in respect of such indictments as were returned during this period; and thus it is that *Robinson,* and *Lewis* and *Walls,* were tried in that court.

The considerations giving rise to our holding in *Hairston* do not control the issue to which we are now speaking. There we said (at 1051–2) that to apply Section 305 to U.S.Code offenses

> would place criminal defendants prosecuted in the federal courts of the District of Columbia on a different footing from those tried in any other federal circuit, although both classes of defendants may be charged under the same U.S.Code provisions. This treatment of similarly situated persons in a different fashion is fraught with equal protection overtones . . .

The "similarly situated persons" so referred to are, of course, those charged with U.S.Code offenses; and our concern in *Hairston* was that persons so charged should not be tried in the federal courts of the District of Columbia under different evidentiary rules than they would be subject to if tried for the same offenses in federal courts outside the District.

Appellants insist that the same concept of equal protection, about which we

professed concern in *Hairston,* requires that *any* criminal defendant tried in the United States District Court for the District of Columbia must receive the same treatment he would get if tried in a federal court elsewhere. The circumstances are not, however, parallel. In the exercise of its power to legislate for the District of Columbia, U.S.Const. Art. I, § 8, cl. 17, Congress has defined certain crimes in the D.C.Code, and has made temporary provision for their trial in the District Court. There is no claim that Congress could not do this.[9] All persons charged solely with D.C.Code offenses are tried under the same rules in the District of Columbia. There is, obviously, no forum elsewhere for the trial of such offenses.

■ The situation is analogous to that which obtains in all of the 50 states, *i. e.,* a person indicted under the criminal laws of a state may be tried in a state court under evidentiary rules different from those employed by the federal courts within that state in the trial of U.S.Code offenses. No one has ever suggested that that violates the Constitution. In any event, for purposes of the exclusive jurisdiction over certain D.C. Code crimes temporarily vested in the District Court here during the transitional period, the District Court is functioning as a "state" court.[10] United States

9. As the Supreme Court observed in Palmore v. United States, 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973): "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes. Congress 'may exercise within the District all legislative powers that the legislature of a state might exercise within the State, and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the constitution of the United States.' Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873 (1899)."

10. The resolution we make of this equal protection claim was, we think, foreshadowed by

the court *en banc* in *Henson,* where we said (n. 20 at 1309 of 486 F.2d):

> Our disposition of these appeals also enables us to forego consideration of what we consider to be an important question raised in respect of the *Henson* and *Brown* cases, both of which were prosecutions for United States Code offenses as contrasted with the *Jeffries* and *Marshall* prosecutions under the District of Columbia Code. If the new D.C. impeachment statute is to be interpreted as applicable to federal criminal trials, it would mean, first, that the federal courts in the District of Columbia would be placed upon a different footing, with respect to the admissibility of evidence of prior convictions, from the federal courts in the other ten circuits, which remain free to devise their own rules of admissibility under Fed.R.Crim.P. 26 irrespective of the rule of the local jurisdiction in which they sit. *See, e. g.,* United States v. Woodall, 438 F.2d 1317, 1327 (5th Cir. *en banc* 1971).

v. Brown, 157 U.S.App.D.C. 311, 483 F.2d 1314 (1973), upon which appellants' principal reliance must rest since, unlike United States v. Thompson, 147 U.S.App. D.C. 1, 452 F.2d 1333 (1971), cert. denied, 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972), it involved a D.C.Code offense, turned not upon equal protection but upon a finding that certain provisions of the Federal Criminal and Appellate Rules superseded the local bail statute. More to the point, and virtually dispositive of appellants' claim, is United States v. Greene, 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973), cert. denied, October 29, 1974, in which we held that the insanity defense provision of the D.C. Court Reform and Criminal Procedure Act applied to the trial of a D.C.Code offense in the District Court during the transitional period. In *Greene* we explicitly disallowed an equal protection contention founded upon the fact that U.S. Courts outside the District (which, of course, try only U.S.Code crimes) are not bound by any such rule in the insanity field.

### III

■ Having concluded that Section 305 applies to the trial in the District Court of D.C.Code indictments returned before August 1, 1972, we turn to the question of what happens in the case of indictments charging both U.S.Code and D.C.Code offenses.[11] The division of this court that decided *Hairston* exhibited its awareness of this problem, and stated a view as to its proper solution in these words (n. 13 at 1054 of 495 F.2d):

To the extent that confusion in the conduct of trials may be anticipated in those cases where the United States Attorney uses the authority given him under the reorganization statute to combine local and federal crimes in the same indictment, resulting in their trial together in the United States District Court, it would appear that the federal forum's evidentiary law would govern impeachment by prior conviction. The United States Attorney is not, of course, bound under the statute to combine local and federal charges, and is, accordingly, under no inescapable necessity to try local crimes under other than local law.

With *Belt* now presenting the issue to the court *en banc*, we adopt the approach of the division in *Hairston*. It is patently not feasible for the District Court to try a defendant, charged with both local and federal offenses, under differing evidentiary rules; and it would be an indefensible imposition upon slender judicial resources to contemplate separate trials for the federal and local counts in such indictments, if indeed the latter approach could be thought to be within the purview of the statutory grant of jurisdiction. Thus, if the United States Attorney elects to combine local offenses with federal, he must do so in the knowledge that the trial will be conducted under federal evidentiary law.

Given our holding in *Hairston* that 14 D.C.Code § 305 does not apply to the trial of U.S.Code offenses, impeachment by prior conviction in trials of such offenses in the District Court is presently governed by Rule 26 Fed.R.Crim.P. which in relevant part provides that "[T]he admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."[12]

11. 11 D.C.Code § 502 provides as follows:
   In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:
   
   \* \* \* \* \* \*
   
   (3) Any offense under any law applicable exclusively to the District of Columbia

which offense is joined in [such] information or indictment with any Federal offense.

12. Under this standard the law governing at the moment is that found in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), as further explicated in Gordon v. United States, 127 U.S.App.D.C. 272, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct.

Congress very recently has acted to provide Rules of Evidence for the federal courts; and the law governing impeachment by prior conviction in the trial of U.S.Code offenses, in the District Court for the District of Columbia as in all others, has been definitively prescribed therein. Public Law 93–595, 93rd Cong., 2nd Sess., approved January 15, 1975. Rule 609 provides that the credibility of any witness, including a criminal defendant, may be impeached by proof of a prior conviction but only if the crime (1) was a felony *and* the court determines that the probative value of the conviction outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement regardless of the punishment.

This final formulation of the impeachment rule was reached in the Conference Committee, whose report makes clear that the discretionary standard is (1) confined in its application to criminal defendants where impeachment "presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record," and (2) does not operate in the case of convictions for offenses involving dishon-

esty or false statement, which are always to be admitted. These latter offenses are, however, narrowly defined by the Conference Committee in these terms:

> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

H.R.Rep. No. 93–1597, 93rd Cong., 2d Sess., p. 9.

By the terms of the enacting statute, the Federal Rules of Evidence will take effect on July 1, 1975. They will apply to "actions, cases, and proceedings brought after the rules take effect." They will also apply to "further procedure in actions, cases, and proceedings then pending, except to the extent that application of the rules would not be feasible, or would work injustice, in which event former evidentiary principles apply."[13]

---

1421, 20 L.Ed.2d 287 (1968). These cases contemplate that prior convictions are generally admissible to impeach the credibility of witnesses in criminal cases, including defendants testifying in their own behalf. It incorporates, however, the familiar common law evidentiary rule that the trial judge may in his discretion, despite the admissibility of otherwise competent and relevant evidence, exclude it when he believes that its probative value for the purpose offered is outweighed by its prejudicial effect. This is the approach taken in a majority of the circuits. United States v. Greenberg, 419 F.2d 808 (3d Cir. 1969); United States v. Hildreth, 387 F.2d 328 (4th Cir. 1967); United States v. Allison, 414 F.2d 407, 411 (9th Cir. 1969); United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968); United States v. Johnson, 412 F.2d 753, 756 (1st Cir. 1969); United States v. Vigo, 435 F.2d 1347, 1351 (5th Cir. 1970); United States v. Williams, 445 F.2d 421, 423 (10th Cir. 1971). *Contra,* United States v. Scarpellino, 431 F.2d 475, 478–79 (8th Cir. 1970); United States v. Escobedo, 430 F.2d 14, 18–20 (7th Cir. 1970); United States v. Griffin, 378 F.2d 445, 446 (6th Cir. 1967). *But see* United States v. Sears, 490 F.2d 150 (8th Cir.), cert. denied, 417 U.S. 949, 94 S.Ct.

3077, 41 L.Ed.2d 670 (1974) (expressly adopting the *Palumbo* standards); United States v. Tubbs, 461 F.2d 43 (7th Cir. 1971), and United States v. McCarthy, 445 F.2d 587 (7th Cir. 1973) (the thrust of the Seventh Circuit decisions may be a rejection of any requirement that the crime be *crimen falsi, see* concurrences of Judge Kiley in *Escobedo* and *Tubbs, supra*).

**13.** The local courts of the District of Columbia are not included among the courts to which the Federal Rules of Evidence are made applicable by the new statute. *See* Rule 1101(a). Congress has heretofore provided that the Superior Court of the District of Columbia "shall conduct its business according to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure . . . ," except that it may adopt modifying rules subject to the prior approval of the District of Columbia Court of Appeals. 11 D.C.Code § 946 (1973). The statute goes on to provide that the Superior Court "may adopt and enforce other rules as it may deem necessary [without such approval] if such rules do not modify the Federal Rules."

## IV

Before 14 D.C.Code § 305 was cast in its present form, this court was periodically confronted with claims that its predecessor statute, even as construed in *Luck* and *Gordon,* was unconstitutional. The argument essentially was that the fair trial concepts embodied in the Fifth and Sixth Amendments were negated by a procedure under which a criminal defendant could testify in his own defense only at the cost of having his prior criminal record made known to the jury. It was urged that, even with the limiting instruction as to the credibility purpose for which that record was admitted, the jury would inevitably tend to equate a prior record with guilt of the pending charge; and this formulation was thought to acquire added force with the Supreme Court's decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[14]

In United States v. Bailey, 138 U.S. App.D.C. 242, 426 F.2d 1236 (1970), a division of this court carefully reviewed these claims, finding them not insubstantial but concluding that Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), foreclosed their allowance.[15] *Spencer* did not directly involve impeachment by prior conviction, since what was under attack in that case was a Texas statutory procedure under which the jury was, for purposes of an increased sentence for recidivism, informed of a defendant's criminal record prior to its resolution of his guilt or innocence of the pending charge. The constitutional challenge to this procedure was articulated in a manner very similar to the objections voiced to impeachment by prior conviction; and the Supreme Court, in

sustaining the Texas statute, purported to find support for that result in the impeachment analogy. Both the majority opinion of Justice Harlan, and a dissenting opinion by Chief Justice Warren, contained observations about the practice of impeachment by prior conviction which were at odds with any claim of its inherent unconstitutionality.

In reaching the result it did in *Spencer,* the majority was at some pains to stress the necessity in a federal system of a considerable degree of latitude within the constitutional framework lest there be "a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts . . ." 385 U.S. at 568–69, 87 S.Ct. at 656. Justice Stewart, concurring specially, said (at p. 569, 87 S.Ct. at p. 656) that "[I]f the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. . . The question is whether those procedures fall below the minimum level the Fourteenth Amendment will tolerate."

With the new dispensation brought about in the District of Columbia by the Court Reorganization Act, creating for the first time a relationship between this court and the local courts of the District more nearly like the one obtaining between federal and local courts elsewhere in the country, we cannot be oblivious of considerations of a similar nature. We deal here with an evidentiary rule promulgated by the legislature for the trial of local crimes in the local courts. For the purposes of the cases before us, the

---

14. In *Bruton* it was held that a defendant's Sixth Amendment right to cross-examination and confrontation was infringed by the admission of the confession of a co-defendant, even though accompanied by an instruction to the jury that it was competent evidence only against the co-defendant and should be disregarded in determining the other defendant's guilt or innocence. The Court was of the view that, although in some situations reliance may be had upon the jury's ability to follow in-

structions, the risk of their not doing so was too great in this instance.

15. The division, recognizing that *Spencer* was a state case decided under the Fourteenth Amendment, alluded to the possibility that this circuit might, in the exercise of its supervisory power, eliminate or severely limit the impeachment of criminal defendants by prior conviction. It concluded that this action would be one more appropriately taken by the court *en banc.*

District Court, as noted hereinbefore, is functioning temporarily as a local court. In this context we must be alert to the admonitions of the Supreme Court against imposing our notions of policy under the guise of constitutional interpretation. In thinking about impeachment by prior conviction, considerations relevant to wise policy, on the one hand, and constitutional requirements, on the other, easily become intermingled, but it is the business of judges to know when the two are not the same.[16]

As in the case of the old, the constitutional challenge to the new statute is total. An alternative reason for finding invalidity is, however, now said to be not that any impeachment at all is bad but, rather, that the statute is mandatory, leaving no room for the judge in a particular case to exclude prior conviction evidence because he believes its probative value on credibility to be outweighed by its prejudicial effect. The constitutional argument in these precise terms has heretofore been pressed upon the D.C. Court of Appeals—the "su-

preme court" of the District of Columbia in the new era ushered in by court reorganization. In Dixon v. United States, 287 A.2d 89 (1972), cert. denied, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972), the D.C. Court of Appeals rejected this argument, as well as the earlier formulations of the constitutional claims which we had, in *Bailey*, found to be barred by the language used in *Spencer.*

In doing so, the DCCA was obliged to recognize that there are words in the *Spencer* opinions that may be thought to look the other way. Justice Harlan, in his opinion for the majority, enumerated a number of situations in which evidence of prior crimes is now, and has long been, held to be admissible in criminal trials. The last in his extended series of examples was "when the defendant has testified and the State seeks to impeach his credibility . . ." He went on to say that (at p. 561, 87 S.Ct. at p. 652):

. . . In all these situations . . . the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to

---

**16.** It was not from any apparent sense of constitutional compulsion that the American Law Institute and the Commissioners on Uniform State Laws long ago concluded that criminal defendants should not be impeached by prior conviction. Model Code of Evidence, Rule 106 (1942): Uniform Rules of Evidence, Rule 21 (1952). *See* Kan.Stat.Ann. § 60–421 (1964); V.I.Code, tit. 5, § 835 (1964). The law has been the same in England since Parliament enacted the Criminal Evidence Act of 1898. Crim.Evid.Act, 61 & 62 Vict. c. 36. *Generally, see* Griswold, The Long View, 51 A.B.A.J. 1017, 1021 (1965); Schaefer, The Suspect and Society 67–68 (1967); and McGowan, Impeachment of Criminal Defendants by Prior Convictions, 1 Ariz.St.L.J. 1 (1970).

*Both the Model Code and the Uniform Rules* make an exception where the defendant opens up the question by adducing affirmative evidence of his good character. The same exception appears in the English statute, along with two others, namely, where the accused has testified against a co-defendant, or has impugned the character of the prosecutor or his witnesses. The Criminal Law Revision Committee, appointed by the Home Secretary in 1959 to examine the criminal laws of England and Wales, in its 1972 report on evidence recommended no substantial change in this area. The report of that Committee also makes clear, however, that in several other respects

the law of criminal evidence in England does not favor the defendant, such as the absence of any privilege against self-incrimination, and the drawing of adverse inferences from the defendant's failure to take the stand or to mention before trial any fact relied upon in his defense.

Whatever the balance of merits or demerits may be thought to be with respect to a rule barring impeachment of criminal defendants, it does eliminate the erratic and appeal-breeding aspects of the discretionary approach—considerations which also, it would seem, may rationally enter into a legislative judgment in favor of mandatory admissibility. In Weaver v. United States, 133 U.S.App.D.C. 66, 408 F.2d 1259, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969), we said (at page 1272):

[T]he degree of utilization of that [discretionary] power will inevitably vary with the temperament and attitudes of the individual judge—a phenomenon hardly peculiar to trial judges, as distinct from their appellate brethren.

We also appended to our opinion in that case an accounting of the disposition of appeals involving the *Luck* issue in the years since that case was decided. That history would not appear to offer much solace to defendants generally.

be outweighed by the validity of the State's purpose in permitting introduction of the evidence. The defendants' interests are protected by limiting instructions . . . and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence . . .

It is this last clause, of course, that gives rise to the contention that the Supreme Court in *Spencer* must be taken as having declared that the constitutionality of impeachment by prior conviction depends upon the saving grace of discretion.[17] Judge Kern, in his opinion for the DCCA, stated this argument fairly

and dealt with it directly. His conclusion was that, when read in the entire context of the majority opinion, this statement could not bear the weight sought to be attributed to it, that is to say, it cannot be characterized as a conscious and purposeful assertion by the Supreme Court that a statute permitting impeachment by prior conviction is bad on its face if it makes no provision in terms for the exercise of discretion.

Our own reading of *Spencer* coincides with that of Judge Kern.[18] In the paragraph of Justice Harlan's opinion immediately following the language in question, he said as follows (at p. 562, 87 S.Ct. at p. 652):

which is relevant to the jury's finding of guilt or innocence . . .

\* \* \* \* \* \*

In all the situations pointed out by the Court, the admission of prior-crimes evidence rests on a conclusion that the probative value of the evidence outweighs the conceded possibility of prejudice. There is no middle position between the alternatives of admission or exclusion because, if the evidence is to serve the purpose for which it is considered probative, it must be admitted before the jury decides whether the defendant is guilty or innocent. The problem thus becomes the delicate one of balancing probative value against the possibility of prejudice, and the result for most state and federal courts (including this Court in the exercise of its supervisory power over proceedings in federal courts) has been that the trial judge is given discretion to draw the balance in the context of the trial. In view of this uniform tradition, it is apparent that prior-convictions evidence introduced for certain specific purposes relating to the determination of guilt or innocence, other than to show a general criminal disposition, would not violate the Due Process Clause.

**17.** Chief Justice Warren, in dissent, thought it unnecessary, in order to achieve the increased punishment purpose of the Texas recidivist statute, to have the fact of a prior conviction made known to the jury before it had passed on guilt or innocence; and he asserted that no reason had been shown why that could not be done in a further hearing after the verdict of guilt had been returned. He acknowledged the admissibility of prior crimes evidence in a number of circumstances, but distinguished them as relevant to the jury's task of passing upon guilt. He noted that "evidence of prior crimes has traditionally been admitted to . . impeach the defendant's credibility when he testifies in his own behalf . . .," and said of this practice that

. . . when prior convictions are introduced to impeach the credibility of a defendant who testifies, a specific purpose is thought to be served. The theory is that the State should be permitted to show that the defendant-witness' credibility is qualified by his past record of delinquent behavior. In other words, the defendant is put to the same credibility test as any other witness. A defendant has some control over the State's opportunity to introduce this evidence in that he may decide whether or not to take the stand. Moreover, the jury hears of the prior convictions following a defendant's testimony, and it may be thought that this trial context combined with the usual limiting instruction results in the jury's actually behaving in accordance with the theory of limiting instructions: that is, that the prior convictions are only taken into account in assessing the defendant's credibility.

\* \* \* \* \* \*

. . . In the case of impeachment, as in all examples [of prior crimes evidence] cited by the Court, the prior convictions are considered probative for a limited purpose

**18.** The unsuccessful petition for certiorari in *Dixon* emphasized strongly the significance of the language about judicial discretion quoted above from the majority and dissenting opinions. And *Dixon* was a case which on its facts raised a very serious question indeed about prejudicial effect.

We also remark that it was the Supreme Court that, subsequent to *Spencer*, proposed Rules of Evidence to the Congress which embraced a rule on impeachment by prior conviction eliminating the exercise of discretion by the trial judge.

This general survey sufficiently indicates that the law of evidence, which has been chiefly developed by the States, has evolved a set of rules designed to reconcile the possibility that this type of information will have some prejudicial effect with the admitted usefulness it has as a factor to be considered by the jury for any one of a large number of valid purposes . . . To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. . . . .

This characterization of his reasoning by analogy from the many instances in which prior crimes evidence is admissible, especially when read in conjunction with his subsequent observations about the duty of the Court to eschew inflexibility in constitutional interpretation where local evidentiary rules are involved, makes it unlikely that Justice Harlan intended, by his generalized reference to judicial discretion, to declare the invalidity of a statute of the kind now before us.

What *Spencer* does appear to contemplate is that a legislature may, without impingement upon the Constitution, conclude that the public interest in getting before the jury this evidence bearing upon the credibility of the defendant-witness outweighs its inescapably prejudicial effect. A belief that such constitutional latitude exists is reflected in the fact that many states, as in a few federal circuits (note 12 *supra*), the admissibility of prior convictions for impeachment purposes is treated as a mandatory matter.[19]

The enactment by Congress of a statute to the same effect for the trial of local crimes in the District of Columbia does not appear to us to be so demonstrably in conflict with the Constitution as to warrant our nullification of the

19. An examination of the state decisions that have dealt with the subject since *Luck* reveals the following:

Two states have gone beyond *Luck* in excluding evidence of prior convictions, *see* State v. Santiago, 53 Hawaii 254, 492 P.2d 657 (1971) (by judicial decision); State v. Roth, 200 Kan. 677, 438 P.2d 58 (1968) (by statute).

Thirteen states have adopted some form of the *Luck* rule, *see* State v. Martin, 217 N.W.2d 536 (Iowa 1974); People v. Jackson, 391 Mich. 323, 217 N.W.2d 22 (1974); Commonwealth v. Binghum, 452 Pa. 554, 307 A.2d 255 (1973); People v. Beagle, 6 Cal.3d 441, 99 Cal.Rptr. 313, 492 P.2d 1 (1972); State v. Driscoll, 53 Wis.2d 699, 193 N.W.2d 851 (1972); Spaulding v. State, 481 P.2d 389 (Alaska 1971); People v. Montgomery, 47 Ill.2d 510, 268 N.E.2d 695 (1971); State v. Toppi, 275 A.2d 805, 810 n. 5 (Me.1971) (dicta); State v. Marquez, 160 Conn. 47, 273 A.2d 689 (1970); Cotton v. Commonwealth, 454 S.W.2d 698 (Ky.1970); State v. Cote, 108 N.H. 290, 235 A.2d 111 (1967), cert. denied, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968); People v. Duffy, 44 A.D.2d 298, 354 N.Y.S.2d 672 (1974); State v. Coca, 80 N.M. 95, 451 P.2d 999 (1969, App.).

Twelve states have, by judicial decision or statute, made *Luck*-type discretion not available, *see* State v. Lombardi, 319 A.2d 347 (R.I. 1974); State v. Prather, 290 So.2d 840 (La. 1974); People v. Yeager, 513 P.2d 1057 (Colo. 1973); State v. Shepherd, 94 Idaho 227, 486 P.2d 82, 85 (1971) ("Because of the practicalities involved in the application thereof, we do not feel Idaho is ready for what might be deemed the more enlightened rule now extant in the District of Columbia."); Commonwealth v. West, 357 Mass. 245, 258 N.E.2d 22 (1970); State v. Morris, 460 S.W.2d 624 (Mo.1970); State v. Gandee, 73 Wash.2d 978, 439 P.2d 400 (1968); State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967); State v. Rush, 248 Or. 568, 436 P.2d 266 (1967); Robinson v. State, 507 P.2d 1296 (Okl.Cr.App.1973); Howard v. State, 480 S.W.2d 191 (Texas Cr.App.1972); Dickerson v. State, 46 Ala.App. 183, 239 So.2d 325 (1971).

The status of one state is somewhat unclear, *compare* State v. West, 285 Minn. 188, 173 N.W.2d 468 (1969); *with* State v. Stewart, 297 Minn. 57, 209 N.W.2d 913 (1973).

We note, however, that no state court has struck down as unconstitutional a statutory denial of trial judge discretion to exclude prior convictions under a *Luck-Gordon* analysis. (Some decisions have implied that the admission of highly remote prior convictions may raise constitutional problems; and Hawaii, in the case cited above, found unconstitutional under both the Hawaii and Federal Constitutions any admission under statute or judicial rule of prior convictions for impeachment.)

choice it reflects in an area of local policy. Such a statute is itself the product of a legislative balancing of the clashing values in having juries possessed of the maximum amount of information relevant to the performance of their essential function, on the one hand, and in minimizing prejudicial effect, on the other. Opinions may differ as to whether, in the case of this statute, the most desirable balance was struck. We do not, however, find anything in *Spencer* or elsewhere which unmistakably and authoritatively declares or implies that that result is lacking in rationality, or that the Constitution requires the balancing process by which it was reached to be repeated by the judicial branch in each case.[20]

## V

In the light of the foregoing, the convictions appealed from in Nos. 72–1738 (Robinson), and Nos. 73–1165 and 73–1167 (Lewis and Walls), are affirmed, with the exception that Robinson's convictions for assault with a dangerous weapon are vacated.

No. 72–1887 (Belt) presents a more difficult problem. There we have held that trials in the District Court of indictments combining U.S. and D.C.Code offenses are to be conducted under federal evidentiary law. That was not done in this case.[21] The transcript indicates that the judge felt bound to apply the mandatory provisions of 14 D.C.Code § 305. This record does not present a harmless error situation, and normally our response is to remand the case to the District Court with directions to review the admissibility of the prior conviction in the light of the discretion available to the court; if it decides that the prior

conviction was admissible in the exercise of a sound discretion, the conviction stands, subject to further review on appeal; if it decides that the prior conviction should have been excluded, the conviction is reversed and a new trial ordered.

■ It is argued that such a remand is not required here since Belt was acquitted of the U.S.Code offense and, even if the trial court should on remand find reversal necessary, impeachment could be had by the Government at the new trial of the D.C.Code offense. However, the fact remains that, because the prosecutor chose to combine U.S.Code and D.C.Code offenses for trial in a federal court, Belt was entitled to be tried under a rule of evidence that afforded the trial court discretion to exclude impeachment by prior conviction. Full recognition and protection of the integrity of that important procedural right does not admit of its forfeiture by the chance that the jury subsequently elected, for whatever reason, to acquit on the federal charge. The possibility that a second conviction may well result on a retrial, if one is actually ever held, does not alone suffice to deprive this defendant of her entitlement to the court's reexamination of the admissibility of the prior conviction in the first trial.

Judgment shall be entered in accordance with the foregoing.

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

I concur in the foregoing opinion insofar as it affirms the convictions of Robinson, Lewis and Walls, and also in its conclusion that D.C.Code § 14–305 is constitutional. With respect to Belt, I con-

20. In McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the Court dealt with the contention that an Ohio practice of permitting prior conviction evidence in a one-stage trial of a capital case where the jury determined both guilt and punishment was a violation of the Constitution. In holding that it was not, the majority opinion said (at p. 213, 91 S.Ct. at p. 1470):

"... [I]t does no violence to the privilege [against self-incrimination] that a per-

son's choice to testify in his own behalf may open the door to otherwise inadmissible evidence which is damaging to his case. *See* Spencer v. Texas, 385 U.S., at 561 and n. 7 [87 S.Ct. 648 at 652, 17 L.Ed.2d 606]; *cf.* Michelson v. United States, 335 U.S. 469 [69 S.Ct. 213, 93 L.Ed. 168] (1948)."

21. The trial in *Belt* was held before our opinion was issued in *Hairston* holding that the statute did not apply to U.S.Code crimes.

cur in Part III of the opinion which holds that federal evidentiary rules govern in the case of a defendant tried in District Court under an indictment charging both federal and local offenses.[1] However, I must conclude that the remand of the judgment of conviction in *Belt* is a meaningless exercise, and therefore I would also affirm that conviction.

On remand of *Belt*, the District Court will be required to rule on the admissibility of impeachment evidence with respect to the U.S.Code offense. This is in itself an absurdity because there was an acquittal on that count and it is no longer pending. Even if one views the trial court as ruling on the admissibility, under federal evidentiary rules, of the prior narcotics conviction *as of the time when both federal and D.C. charges were still pending before the court*, the most relief the court can afford appellant is a reversal of the conviction on the D.C. offense. However, on retrial appellant will be charged solely with a D.C.Code offense. In this situation, Part II of the foregoing opinion holds that if appellant testifies, section 14–305 applies and the prior conviction *will* be admissible for purposes of impeachment exactly as it was admitted at the first trial. Thus a retrial will likely involve exactly the same evidence as the original trial. While the exercise of her right "to the court's reexamination of the admissibility of the prior con-

viction in the first trial" (Majority Op. at 169 U.S.App.D.C. at page ——, 514 F.2d at page 850) may be of some academic interest, that re-examination will in the end have no practical effect on Belt's substantive rights. It is most inappropriate for this court to compel the District Court to squander its time by engaging in pointless academic excercises.

Nor is there any reason to infer that the presence of the U.S.Code charge, and the evidence offered in support thereof, contributed to the jury's finding of guilt on the D.C.Code charge, and that appellant was prejudiced thereby. The jury was expressly instructed to consider each offense separately (Tr. 221), and the finding of guilt on the D.C.Code offense was amply supported by substantial evidence.

The *Belt* case presents the clearest example of a "[defect] which do[es] not affect the substantial rights of the parties."[2] Under such circumstances, 28 U.S.C § 2111 and Fed.R.Crim.P. 52(a) mandate that this court "shall give judgment . . . without regard to [such] errors or defects . . . ."[3] In my view these authorities should control the disposition of *Belt*.

I would affirm the conviction of Belt on the D.C.Code offense and thus respectfully dissent to its remand. Otherwise, I concur in the result expressed in the majority opinion.[4]

---

1. I would not at present go so far as to hold where an indictment charged both federal and D.C.Code offenses, but the federal offense was dismissed during trial, that thereafter the rules of evidence of the District of Columbia courts would not be applicable.

2. 28 U.S.C § 2111 provides:

On the hearing of any appeal or writ of certiorari in any case, the court *shall* give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

(Emphasis added.)

Fed.R.Crim.P. 52(a) provides:

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

3. 28 U.S.C § 2111.

4. I cannot join in the observations contained in notes 13 and 16 of the Majority Opinion. They are completely unnecessary to the decision in these cases and thus are merely *dicta*. Moreover, I consider the underlying logic of the treatises cited in note 16 to be faulty in that it would take from the jurisprudence of states and foreign nations procedures that are most favorable to defendants and engraft them into our jurisprudence without adopting any of the offsetting procedures those fora apply to insure that justice is done for the public as well as the accused. The result of such changes would be a criminal procedure overbalanced in favor of the accused and against the interests of society, and it was partially to avoid precisely such procedures, with the detrimental result they cause, that Congress enacted D.C.Code § 14–305 and Rule 609 of the Federal Rules of Evidence.