780 F.2d 1021
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
GEORGE NORRIS HALL, Petitioner-Appellant,
v.
WILLIAM F. GRANT, Respondent-Appellee.
 84-1531
 United States Court of Appeals, Sixth Circuit.
 11/20/85
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: KRUPANSKY and MILBURN, Circuit Judges; and HIGGINS, District Judge*.
 PER CURIAM.
 
 
 1
 Petitioner George Hall appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. On appeal petitioner advances three due process claims. First, petitioner argues that the state trial court erred as a matter of state evidentiary law in ruling on his motion in limine that certain felony convictions could be used by the state for impeachment purposes. Petitioner argues that this alleged erroneous evidentiary holding prevented him from taking the stand and telling his side of the story thereby depriving him of his due process right to a fair and impartial trial. Second, petitioner argues that the trial court's denial of his motion for a new trial was arbitrary and capricious and denied his due process right to a full and fair hearing. Third, petitioner argues that he was not permitted to present the defense of diminished capacity and thus was denied his due process right to present the defense of his choice. For the reasons that follow, we affirm the district court in all respects.
 
 I.
 PROCEDURAL FACTS
 
 2
 On October 24, 1975, petitioner was convicted by a jury in Ingham County Circuit Court of the following crimes: '(1) separate convictions for the premeditated murder and felony murder of John E. Fowler . . .; (2) separate convictions for the premeditated murder and felony murder of Lawrence Chappell . . .; (3) separate convictions for the second-degree murder and felony murder of Charles Bovinette . . .; (4) separate convictions for assault with intent to commit the crime of murder and assault with intent to rob while armed of N. A. Gaulden . . ..' People v. Hall, 83 Mich. App. 632, 269 N.W.2d 476, 479 (1978), leave denied, 405 Mich. 826 (1979). Petitioner was sentenced to life imprisonment without parole on the five first-degree murder convictions and to life imprisonment on the remaining three convictions.
 
 
 3
 On direct appeal to the Michigan Court of Appeals petitioner challenged, among other things, his having been sentenced to six life terms for the commission of three criminal acts and the refusal of the trial court to admit evidence of diminished capacity. The Michigan Court of Appeals '[a]ffirmed but with an order to vacate the three life sentences,' imposed for the felony murders of John E. Fowler and Lawrence Chappell and for the second-degree murder of Charles Bovinette. People v. Hall, 83 Mich. App. 641, 269 N.W.2d at 481. Subsequent to his direct appeal, petitioner filed a pro se delayed motion for a new trial in the Ingham County Circuit Court. This motion focused on newly discovered evidence and the trial court's ruling that certain felony convictions were admissible for impeachment purposes. The motion was denied as were his applications for delayed appeal to the Michigan Court of Appeals, People v. Hall, No. 57883 (Mich. App. Oct., 1981), and for leave to appeal to the Michigan Supreme Court. People v. Hall, 414 Mich. 945 (1982).
 
 TRIAL FACTS
 
 4
 The facts surrounding petitioner's conviction, as given by the Michigan Court of Appeals, are as follows:
 
 
 5
 Little dispute exists about the events leading up to defendant's conviction. Early in the morning of January 30, 1975, defendant was a participant in a card game at the home of John Fowler in East Lansing, Michigan. At about 3 a.m. defendant and Lawrence Chappell became involved in an altercation. Testimony at trial indicated that defendant produced a knife and threatened Chappell with violence. Eventually the parties returned to their card game and defendant left the building at 5 a.m. At that time only Lawrence Chappell, Charles Bovinette, N. A. Gaulden and John Fowler remained at Fowler's residence. Half an hour later, defendant went to the home of Karen Lawson and demanded the return of firearms he had left with her.
 
 
 6
 Testimony regarding the actual murders was produced by N. A. Gaulden, the lone survivor of the incident. At about 6 a.m., defendant and another man identified as Leo McGill returned to the home where the card game was being played. Defendant was refused his request to rejoin the game because he had no money. Defendant responded, 'Never mind, it doesn't matter. We are taking all the money anyhow.' At this point, defendant and codefendant McGill drew guns and ordered everybody to the floor. Gaulden then heard shots and saw Charles Bovinette fall, although he could not determine who had fired the shots. Next, he saw defendant shoot at Lawrence Chappell.
 
 
 7
 Defendant then told Gaulden to give him his money. After complying, he was ordered to lie on the floor. He then heard several shots and was struck twice by bullets, once in the side and once in the back. Shortly afterward, Gaulden called the police. On arrival they found John Fowler and Lawrence Chappell dead. Charles Bovinette died on February 4, 1975.
 
 
 8
 People v. Hall, 83 Mich. App. 632, 635-36, 269 N.W.2d 476, 478.
 
 II.
 A. Prior Felony Convictions
 
 9
 Prior to his 1975 trial, petitioner presented the trial court with a motion to forbid the government from introducing his prior felony convictions for the purposes of impeaching his credibility as a witne s. At issue were his 1962 and 1970 convictions for armed robbery and his 1966 conviction for attempted breaking and entering. The trial court denied the motion and held that if petitioner chose to take the stand, prior convictions would be admissible for impeachment purposes. At the trial defendant did not take the stand.
 
 
 10
 The argument advanced in the petition for a writ of habeas corpus, and now on appeal, is made in two parts. First, petitioner argues that the trial court's holding violated state evidentiary law. Second, petitioner argues that the trial court's error prevented him from taking the witness stand and resulted in fundamental unfairness depriving him of his due process right to a fair and impartial trial. For purposes of our discussion, we will assume that the petitioner's state law argument is correct.
 
 
 11
 The court's inquiry, thus, is limited to whether the state evidentiary 'error' rendered the trial so fundamentally unfair as to deprive the accused of due process of law. Oliphant v. Koehler, 594 F.2d 547, 555 (6th Cir.), cert. denied, 444 U.S. 877 (1979). Petitioner's argument that his due process rights were violated is premised on the proposition that the trial court's ruling prevented him from taking the witness stand.
 
 
 12
 In Luce v. United States, 105 S. Ct. 460 (1984), the Supreme Court addressed the issue of whether a district court's denial of a motion to forbid the use of a prior conviction was reviewable although the defendant, following the ruling, opted not to take the stand. In holding that the district court's ruling was not reviewable, the Supreme Court noted that '[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor' . . . a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify.' Luce, 105 S. Ct. at 463-64 (citations omitted). Thus, the only remaining question is whether, standing alone, the state court's denial of a motion to preclude the use of prior similar felony convictions for impeachment purposes violates due process. We hold that it does not.
 
 
 13
 The analogous federal evidentiary rule which controls the admissibility of prior convictions is Rule 609(a). In Luce the Supreme Court noted that 'a decision under Rule 609(a)' is 'a question not reaching constitutional dimensions.' Luce, 105 S. Ct. at 464.
 
 
 14
 Similarly, in a well-reasoned opinion the United States Court of Appeals for the District of Columbia Circuit held that a statute making evidence of a prior conviction 'mandatorily admissible' was not violative of the due process clause of the fifth amendment. United States v. Belt, 514 F.2d 837 (D.C. Cir. 1975) (en banc). If a statute making such evidence mandatorily admissible does not violate the due process clause of the fifth amendment, a holding with which we agree, then it follows logically that a state judge's ruling to admit such evidence does not rise to the level of a constitutional violation.
 
 
 15
 B. The 'Newly Discovered Evidence'
 
 
 16
 The next argument advanced by petitioner is stated as follows:
 
 
 17
 The trial court's ruling at petitioner's hearing on petitioner's motion for a new trial was arbitrary and capricious, denying petitioner his right to a full and fair hearing as required by Michigan and federal law, thus depriving petitioner of his right to due process.
 
 
 18
 Petitioner's Brief at 29. Before addressing this argument, we will briefly review the relevant facts before the state trial court. Petitioner's motion for a new trial was based on evidence relevant to guilt or innocence which petitioner alleged was newly discovered. The state trial court, after reviewing affidavits supporting the motion, held that the evidence was not newly discovered. The trial court held that, moreover, even if considered newly discovered, the evidence was tantamount to a recanting affidavit by petitioner's co-defendant and thus not sufficient to support a motion for a new trial. See People v. Williams, 77 Mich. App. 119, 132, 258 N.W.2d 68 (1977).
 
 
 19
 Exactly what 'ruling' petitioner challenges is not clear from his brief. At least two possibilities are present. First, petitioner addresses the trial court's refusal to call the affiants back so that 'a fair evaluation of the . . . witnesses' testimony' could be made. Second, petitioner discusses at some length the trial court's ruling that the evidence did not qualify as newly discovered under state law. After discussing these rulings, petitioner states, without supporting authority, that '[i]f a witness who has not testified at trial offers evidence that meets all of the criteria for newly discovered evidence under the law of the state and that evidence is still ruled imcompetent [sic] by a trial court, without basis in law or fact, then that ruling violates defendant's due process right to a fair evaluation of his evidence.' Petitioner's Brief at 31 (emphasis in original).
 
 
 20
 We disagree. Even if, as petitioner asserts, the evidence meets all the state law criteria for newly discovered evidence, it has long been held that 'the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not ground for relief on federal habeas corpus.' Townsend v. Sain, 372 U.S. 293, 317, 83 S. Ct. 745, 759 (1963). Thus, newly discovered evidence of this type 'does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not its legality.' Shaver v. Ellis, 255 F.2d 509, 511 (5th Cir. 1958), quoted in, Drake v. Francis, 727 F.2d 990 (11th Cir. 1984).
 
 C. Diminished Capacity Defense
 
 21
 As to the alleged error concerning this claim for relief, the district court's opinion with which we agree and adopt states:
 
 
 22
 With respect to this claim, the Michigan Court of Appeals, on direct appeal, held that Petitioner was not prejudiced by the trial court's ruling because the trial court did admit certain evidence regarding diminished capacity defense and also gave an appropriate instruction although not specifically labeled 'diminished capacity.' That court determined that the jury 'had the benefit of all relevant evidence relating to the defense.' People v. Hall, 83 Mich. App. 632, 638 (1978), lv. den., 405 Mich. 826 (1979).
 
 
 23
 In view of these findings, this Court holds that the trial court's ruling did not deprive Petitioner of fundamental fairness and thus did not violate due process. Therefore, Petitioner is not entitled to habeas relief on this claim.
 
 
 24
 Accordingly, we AFFIRM the district court in all respects.
 
 
 
 *
 The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation